UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| DANA MARIE ROLIN, | ) | Civil Action No.: 4:21-cv-00870-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| Kilolo Kijakazi,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended,

42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of

Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues

before the Court are whether the findings of fact are supported by substantial evidence and whether

proper legal standards have been applied. This action is proceeding before the undersigned pursuant

to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

**I. RELEVANT BACKGROUND**

**A.    Procedural History**

Plaintiff filed an application for DIB in May 2018, alleging inability to work since March 23,

2017. (Tr. 16).  Her claims were denied initially and upon reconsideration.  Thereafter, Plaintiff filed

a request for a hearing. Plaintiff and a vocational expert (VE) testified at a hearing in September

2019. The Administrative Law Judge (ALJ) issued an unfavorable decision on November 20, 2019,

finding that Plaintiff was not disabled within the meaning of the Act.  (Tr. 16-27).  Plaintiff filed a

_____

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ.
P. 25(d), she is automatically substituted for Defendant Andrew Saul who was the Commissioner
of Social Security when this action was filed.

request for review of the ALJ's decision, which the Appeals Council denied in January 2021, making

the ALJ's decision the Commissioner's final decision.  (Tr.1-3).  Plaintiff filed an action in this court

in March 2021. (ECF No. 1).

**B.    Plaintiff's Background**

Plaintiff was born on January 21, 1966 and was fifty-one years old on the alleged onset date.

(Tr. 26).  Plaintiff had past work as an employer's representative, job development specialist,

merchandiser, retail store manager, and retail floor manager. (Tr. 26). Plaintiff initially alleges

disability due to bipolar disorder, anxiety disorder, and major depressive disorder. (Tr. 75).

**C.    The ALJ's Decision**

In the decision of November 2019, the ALJ made the following findings of fact and

conclusions of law (Tr. 16-27):

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2.  The claimant has not engaged in substantial gainful activity since March 23, 2017, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  The claimant has the following severe impairments: bipolar disorder, generalized anxiety disorder, and a history of alcohol use disorder (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: She is limited to Dictionary of Occupational Titles Mental reasoning level 2 (defined as follows: apply commonsense understanding to carry out detailed, but uninvolved written or oral instructions. Deal with problems involving a

2

few concrete variables in or from standardized situations). Additionally, she is limited to frequent interaction with the public, coworkers, and supervisors.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.     The claimant was born on January 21, 1966 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from March 23, 2017, through the date of this decision (20 CFR 404.1520(g)).

## II. DISCUSSION

Plaintiff argues generally that the ALJ did not perform a proper function by function RFC analysis. Plaintiff argues the RFC does not properly account for difficulty with concentration, persistence, and pace and interacting with others.  Plaintiff argues the ALJ erred in evaluating the opinions of Dr. Aiken and Dr. Keith. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

## A.     LEGAL FRAMEWORK

### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5)

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

4

whether the impairment prevents him from doing SGA.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of

that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

## B.    ANALYSIS

### Opinions

Plaintiff argues the ALJ erred in evaluating the opinions of Dr. Aiken and Dr. Keith.

For applications filed on or after March 27, 2017, such as this action, the regulatory

framework for considering and articulating the value of medical opinions has been changed. *See* 20 C.F.R. § 404.1520c, § 416.920c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017). Importantly, the new regulations no longer require any special significance be given to opinions by a treating physician. *See* 20 C.F.R. § 404.1527 (noting that the treating physician rule only applies to claims filed before March 27, 2017),§ 416.920c.  The ALJ is not required to defer to or give any specific weight to medical opinions.  20 C.F.R. § 404.1520c(a)§ 416.920c(a).  Instead, the ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of:  (1) supportability; (2) consistency; (3) relationship with the claimant(length, frequency, purpose, extent, and examining); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b), (c); § 416.920c(b),(c). Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. § 404.1520c(a), (b)(2), § 416.920c(a), (b)(2).  An ALJ is not required to explain how the remaining factors were considered.   20 C.F.R. § 404.1520c(b)(2), § 416.920c(b)(2).  In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."  20 C.F.R. § 404.1520c(c)(1), § 416.920c(c)(1).  In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. § 404.1520c(c)(2), § 416.920c(c)(2).

7

Dr. Aiken

There are three different opinions in the record from Dr. Aiken.

In March 2017, Dr. Aiken stated Plaintiff was unable to work due to a psychiatric condition. (Tr. 352). The ALJ found this statement was not a medical opinion but was a finding dispositive of the case and such issues were reserved to the Commissioner. (Tr. 24); 20 C.F.R. § 404.1520b(c)(3)(no analysis is required for evidence that is inherently neither valuable nor persuasive and that includes statements on issues reserved to the commissioner).

In June 2018, Dr. Aiken completed a form. (Tr. 544). Diagnosis were bipolar II and social phobia. (Tr. 544). Findings were from structured testing, past diagnosis, and treatment response. (Tr. 544). Dr. Aiken found the symptoms and limitations appeared prior to September 2015. (Tr. 544). Plaintiff had symptoms of mood disturbance, depressive syndrome, bipolar syndrome, anxiety, loss of interest, appetite disturbance, pressure of speech, flight of ideas, psychomotor agitation, decreased energy, decreased need for sleep, easy distractibility, difficulty concentrating, recurrent severe panic attacks at least once a week, memory impairment, and emotional lability. (Tr. 544-545). Plaintiff was moderately limited(fair) in ability to understand, remember, or apply information, and example of limitation was unable to focus, concentrate, or make good decisions. (Tr. 546). Plaintiff was moderately limited(fair) in ability to interact with others and example of limitation was unable to engage in social environment. (Tr. 546). Plaintiff was moderately limited(fair) in ability to concentrate, persist, or maintain pace, and example of limitation was unable to concentrate or focus. (Tr. 546). Plaintiff was moderately limited(fair) in ability to adapt or manage oneself and there was no example of limitation. (Tr. 546-547). Plaintiff was mildly limited in understanding/memory and example of limitation was unable to remember some simple tasks; yet, under the subcategories of

8

the same category, Plaintiff was markedly limited in all subcategories, including understanding and carrying out very short and simple instructions. (Tr. 547). Plaintiff could only maintain attention less than thirty minutes before needing a break or redirection. Plaintiff did not require enhanced supervision. (Tr. 547). Plaintiff could never work appropriately with the public, coworkers, or supervisors. (Tr. 547). Plaintiff was unable to socially engage. (Tr. 548). The off task percentage question was not answered and it was typed in "unable to work at any capacity." (Tr. 548).

In August 2018, Dr. Aiken completed a different form. (Tr. 550). Plaintiff had been seen every 2-3 months from September 2015 to June 2018. (Tr. 549). Plaintiff had been psychiatrically hospitalized[4] in August 2018. (Tr. 549). Plaintiff had good compliance. Treatment was effective; Plaintiff was at baseline but still symptomatic and/or still had residual symptoms. (Tr. 549). Further improvement was expected, but condition was chronic and full remission was not expected. (Tr. 549). Diagnosis was bipolar and medications were Seroquel, Flibanserin, and Clonidine. (Tr. 549). Plaintiff had appropriate affect, depressed/anxious mood, normal thought process, low average cognitive ability, severely distractible, and good memory. (Tr. 550). Plaintiff had poor ability to relate to others. Poor ratings explanation was "due to mental impairment, patient is not always able or [has] the ability to meet criteria." (Tr. 550). "No office notes available for the requested time frame." (Tr. 550).

In July 2019, Dr. Aiken completed the same form as he did in June 2018. (Tr. 748). Findings that supported the bipolar diagnosis were: depressed mood most days over the past two weeks, anhedonia most days over the past two weeks, appetite or weight change, trouble sleeping nearly

---

[4] The record contains an admission to Daymark Recovery Services, Inc. from July 27, 2018 to August 3, 2018, for alcohol detoxification. (Tr. 436, 444); (ECF No. 19 at 8).

every night, motoric change most days, worthless or guilty thoughts most days, and trouble concentrating or making decisions most days. Dr. Aiken opined that the symptoms and limitations first appeared in March 2017. (Tr. 748). Different from the prior form, there were no symptoms indicated from under the headings of manic or anxiety. (Tr. 749). The same symptoms as under diagnosis were indicated. (Tr. 749). Under what findings support symptoms, Dr. Aiken noted Plaintiff endorsed low-moderate depressed mood, severe hypoactivity, severe problems with concentration/decision making, mild hopelessness, and low-moderate anxiety. (Tr. 749). Plaintiff was markedly limited in ability to understand, remember, or apply information and examples of limitations were unable to focus, concentrate, or make good decisions during episodic flare ups. (Tr. 750). Plaintiff was markedly limited in ability to interact with others and no examples were given. (Tr. 750). Plaintiff was markedly limited in ability to concentrate, persist, or maintain pace and example of limitation was unable to concentrate during episodic flare ups. (Tr. 750). Plaintiff was markedly limited in ability to adapt and there was no example of limitation provided. (Tr. 750). Plaintiff was markedly limited in understanding/memory and example of limitation was unable to focus at any capacity during episodic flare up. (Tr. 751). Plaintiff could maintain attention less than 15 minutes before requiring a break. (Tr. 751). None of the social interaction questions were answered this time. (Tr. 751). Written in for explain the degree of limitation: "little to no social interaction." (Tr. 752). None of the adaptation questions were answered. Plaintiff would be off task more than 25% of workday. Plaintiff would be absent from work three days a month. (Tr. 752).

The ALJ considered the three opinions together:

The undersigned finds these opinions are not persuasive, as they are from the same doctor and are inconsistent with each other. Notably, in 16F Dr. Aiken noted claimant had moderate limitations in her ability to remember, but stated she had mild

10

limitation in her memory. Additionally, these opinions are not supported by the record, which showed claimant had normal mental status examinations (13F/14F/28F/43F). Specifically, claimant's mood was good and her affect was euthymic in September 2019 (43F/2).

(Tr. 24).

The example from the ALJ of inconsistency as to the memory opinion in Exhibit 16F is an internal inconsistency not necessarily an inconsistency with other evidence. Plaintiff focuses on the assertion that opinions can vary over time because mental impairments vary over time. (ECF No. 19 at 30). Plaintiff argues the findings are substantially different in "large part because of [Plaintiff's] drinking." (ECF No. 19 at 30). The ALJ relied on more evidence than this to find the opinions not persuasive; the ALJ considered the 20 C.F.R. § 404.1520c supportability and consistency factors and cited to exams by others which were mostly normal, citing to Exhibits 13F, 14F, 28F, and 43F.

Exhibits 13F includes treatment records from Daymark Recovery Services in 2018. (Tr. 433). On July 27, 2018, Plaintiff presented voluntarily to detox from alcohol. Plaintiff had been drinking six glasses of wine daily. (Tr. 436). Plaintiff reported during the two weeks of her relapse, she did not take her medications. (Tr. 501). At discharge on August 3, 2018, Plaintiff was free of symptoms of withdrawal and distress. Plaintiff presented with appropriate mental status throughout the stay with improved affect and appropriate eating and sleeping habits. (Tr. 436). Plaintiff reported she was able to think clearly again. Plaintiff appears to have enjoyed hanging out with others and playing games. (Tr. 436). Plaintiff's strengths were good general health, personable, able to make friends, and able to handle activities of daily living. (Tr. 437). Plaintiff reported problems related to social environment. (Tr. 438). Plaintiff participated in group therapy by asking questions and commenting. (Tr. 446-448.). Plaintiff reported prior admissions for alcohol in 2017 and depression in January

2018. (Tr. 451). Plaintiff reported her alcohol use resulted in her loss of employment. (Tr. 452). Upon exam, Plaintiff had logical thought process, cooperative behavior, full affect, normal mood, average intelligence, and fair judgment. (Tr. 453). Plaintiff displayed no psychotic symptoms. (Tr. 455). On July 28, Plaintiff was stable with no hypomania or mania and no trouble with appetite, energy, mood, or sleep and had intact memory/cognition. (Tr. 461).

Exhibit 13F also included notes from a January 2018 admission. (Tr. 464). Plaintiff presented with diagnosis of bipolar with depressed mood and recent hypomania. Plaintiff presented with a drug screen positive for amphetamines. (Tr. 471). Upon discharge exam, Plaintiff had normal attention span and concentration. Plaintiff had decreased anxiety. (Tr. 464). Strengths were good general health, personable, has some social skills, friendly, and is verbal. (Tr. 466). Plaintiff participated in group therapy by asking questions and commenting. (Tr. 469, 474). Plaintiff reported she did not currently feel depressed. Plaintiff reported she was socially uncomfortable and had a lot of anxiety with dynamic family situations involving a move, a possible separation, and being in the middle of bankruptcy. Uncertainties caused her additional stress. Plaintiff reported good appetite and sleep. (Tr. 471). Plaintiff had flight of ideas and rapid speech. Plaintiff was demonstrating hypomania actions with being very restless and agitated in her seat. (Tr. 471). Plaintiff had manic affect. (Tr. 472). Medications were adjusted. (Tr. 472). It was noted Plaintiff was seeking employment. (Tr. 476). Medications were effective. (Tr. 477). Upon exam on January 9, Plaintiff had normal speech, logical thought process, full affect, and cooperative behavior. (Tr. 480). Goals were to obtain medication management, stabilization in family life, and decrease social isolation. (Tr. 481).

Exhibit 14F includes more records from Daymark Recovery Services, some of which are duplicates from Exhibit 13F. (Tr. 500). Plaintiff was assessed on June 14, 2017. Plaintiff reported

she had been drinking during the day at work and lost her job. Plaintiff reported she was recently released on June 5 from a rehab in Florida. (Tr. 518). Plaintiff reported shutting most people out and had minimal social activities, which included exercise and active involvement in faith community. (Tr. 518). Exam was normal speech, logical thought process, normal mood, full affect, and fair judgment. It is unclear whether there was a cognition impairment. (Tr. 521). Plaintiff's strengths were friendly, personable, and able to handle activities of daily living. (Tr. 523). Plaintiff's need was to maintain sobriety. Plaintiff reported bipolar symptoms. (Tr. 524). There is a note from October 2017 where Plaintiff reported being sober for six months. Plaintiff was attending 5-6 AA meetings a week. Plaintiff had polypharmacy and they were trying to scale back some of her medication. (Tr. 527). Upon exam, Plaintiff had normal speech, cooperative behavior, somewhat tangential thought process, appropriate affect, and variable mood. (Tr. 527). In September 2017, it is noted Plaintiff could not afford to continue to see Dr. Aiken and had received medications from him but had not filled them. Plaintiff was told she would not be treated for ADHD. (Tr. 529). Plaintiff had appropriate affect and variable mood. (Tr. 529). Plaintiff was told to destroy the prescriptions from Dr. Aiken. (Tr. 530).

Exhibit 28F includes an emergency room visit in January 2019. (Tr. 666). Diagnosis were fatigue, dizziness, giddiness, and slurred speech. (Tr. 666). Plaintiff reported she had completed full detox and had intermitted episodes of sleepiness and slurred speech. It was most likely secondary to polypharmacy. (Tr. 667). Plaintiff had normal mood and affect upon exam. (Tr. 668).

Exhibit 43F includes 2019 notes from Three Rivers Behavioral Health. (Tr. 985). Exam at discharge in September 2019 was good mood, cooperative behavior, good judgment, and normal thought content/process. (Tr. 985). Plaintiff was stable without limitations and was able to perform

instrumental and basic activities of daily living. (Tr. 986). Plaintiff was discharged on six medications. (Tr. 986). In August 2019, Plaintiff reported doing much better on her medication. (Tr. 987). Upon exam, Plaintiff had euthymic affect, fine mood, normal thought content/process, and limited judgment. (Tr. 987). Plaintiff had good memory and intact attention/concentration. (Tr. 988). Symptoms to target were mania and estimated discharge was 3-4 weeks. (Tr. 988). On August 5, 2019, Plaintiff reported excessive worry pending results of disability hearing. Plaintiff reported maintaining adequate appetite and concentration. Plaintiff reported excessive sedation with Seroquel. (Tr. 989). Exam was fine mood, blunted affect, normal thought content/process, and limited judgment. (Tr. 989). Plaintiff had intact attention/concentration. (Tr. 990). Seroquel was reduced; vyvanse was discontinued. On August 14, Plaintiff reported already benefitting from therapy and had normal exam with bright affect and good judgment. (Tr. 991). Similar findings were noted on August 23. (Tr. 993). Plaintiff was seen for one month from August 5 to September 9. (Tr. 995). It is unclear whether this was intensive outpatient or inpatient stepdown as both are noted on the same page. (Tr. 1000). Plaintiff was previously inpatient one week in July 2019. At discharge, Plaintiff reported depression at level zero and anxiety at level two. (Tr. 995).

Under the deferential standard of review applicable here, substantial evidence is not a high threshold. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The ALJ here performed the analysis under the applicable regulatory scheme and considered the factors most important to determining the persuasiveness of opinions from Dr. Aiken. The ALJ cited to the record to support this finding and followed the applicable regulatory law.

Dr. Keith

In August 2018, Dr. Keith, a one time examining psychologist, examined Plaintiff. (Tr. 552).

14

Plaintiff reported being hospitalized for five nights in North Carolina in January 2018 and again in July 2018 for four days. (Tr. 552). Plaintiff reported she lays in bed all day. Plaintiff reported she went to AA meetings every day. (Tr. 552). Plaintiff shops and performs chores. Plaintiff goes out with her husband once a week. Plaintiff talks on the phone 2-3 times a day. (Tr. 552). Plaintiff has a degree in psychology and was employed by the state of North Carolina where she was found to be drinking alcohol at work. (Tr. 553). Plaintiff reported drinking a bottle of wine a day. Plaintiff had been to detox twice. Plaintiff attended church once a week and got along okay with others. (Tr. 553). Upon exam, Plaintiff had appropriate eye contact, hyper affect, good mood, and normal psychomotor function. Plaintiff reported she is either coming out of depression or going into a depression. Plaintiff was somewhat hyper throughout the session but was on task. Plaintiff had intact remote memory. Plaintiff reported sleep disturbance. (Tr. 553). Plaintiff reported she was unable to work due to medication and being hyper. (Tr. 554). Plaintiff had adequate abstract reasoning, intact judgment, and adequate concentration. (Tr. 554). Plaintiff "should be able to follow simple instructions, complete simple tasks, and complete moderately complex activities." Because of Plaintiff's hyper presentation, she "may have some difficulty" with sustained concentration, satisfactory job pace, and persisting throughout the work day.

The ALJ found: "The undersigned finds this opinion is persuasive, as it shows claimant has mental limitations, but not so severe as to preclude work activity, as supported by the record." (Tr. 24). Plaintiff frames Dr. Keith's opinion as "would have difficulty"; this phrasing is different from the actual opinion of "may have some difficulty." (ECF No. 19 at 33); (Tr. 554). Plaintiff argues the ALJ is inconsistent by finding that Dr. Keith's opinion is persuasive and then the ALJ allegedly not finding any RFC restrictions as to CPP. However, the ALJ gave explanations and specific mental

limitations in the RFC, as discussed below.

Under the deferential standard of review applicable here, substantial evidence is not a high threshold. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The ALJ here performed the analysis under the applicable regulatory scheme and considered the regulatory factors to determine the persuasiveness of opinions from Dr. Keith. The ALJ cited to the record to support this finding and followed the applicable regulatory law.

**RFC**

Plaintiff argues generally that the ALJ did not perform a proper function by function RFC analysis. Plaintiff argues the RFC does not properly account for difficulty with concentration persistence, and pace and interacting with others.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in

16

the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's

decision.  *See Craig*, 76 F.3d at 595.

<u>Concentration, Persistence, and Pace (CPP)</u>

Plaintiff cites to *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) and cases following *Mascio*.

(ECF No. 19 at 21-23). Plaintiff makes a number of citations to dissimilar RFCs of simple, routine,

repetitive tasks or unskilled work. (ECF No. 19 at 21-23).  However, Plaintiff's RFC is not any of

those. Plaintiff has an RFC of: "She is limited to Dictionary of Occupational Titles Mental reasoning

level 2 (defined as follows: apply commonsense understanding to carry out detailed, but uninvolved

written or oral instructions. Deal with problems involving a few concrete variables in or from

standardized situations). Additionally, she is limited to frequent interaction with the public,

coworkers, and supervisors." (Tr. 21).

Plaintiff's citations to cases regarding dissimilar RFCs is not persuasive; however, Plaintiff

also presents the argument that there is no explanation as to why the moderate difficulty in CPP

found does not translate into a limitation in the RFC.  The Fourth Circuit held that an ALJ does not

account for a claimant's limitations in concentration, persistence, and pace by restricting the RFC

or the hypothetical question to the vocational expert to simple, routine tasks or unskilled work.

*Mascio v. Colvin*,  780 F.3d 632, 638 (4th Cir. 2015). The functional area of "concentration,

persistence and pace" refers to the "ability to sustain focused attention and concentration sufficiently

long to permit the timely and appropriate" completion of work.  20 C.F.R. pt. 404, Subpart P, App.

1 § 12.00(c)(3). The Fourth Circuit noted that the ALJ's error may be cured by an explanation as to

why the claimant's moderate difficulties in concentration, persistence, and pace did not translate into

a limitation in the claimant's RFC, but that remand is necessary absent such an explanation. *Mascio*,

780 F.3d at 638.  Reading the opinion as a whole, the ALJ provided such explanation. *See Craig*, 76 F.3d at 595.

The ALJ here at the paragraph B listing analysis found Plaintiff had a moderate limitation in CPP due to Plaintiff's reports of issues with concentration and following instructions, noting Plaintiff also reported watching television and reading. Plaintiff retained the ability to concentrate, persist, and maintain pace for two hour periods during the workday.[5] (Tr. 20). The ALJ later discussed Plaintiff's ability to drive a car, which the ALJ stated shows "she can maintain concentration, persistence, and pace by operating her vehicle in real time in close proximity to other vehicles, and unexpected events, the entire time she is driving." (Tr. 20). The ALJ discussed Plaintiff's reports and mostly normal exams, citing Exhibits 14F/27, 13F/22, 13F/49, 28F/7, 41F/8. (Tr. 22).  The ALJ then weighed opinions. (Tr. 23-25). The ALJ found that after considering the record, Plaintiff was limited to the RFC and Plaintiff's reports were not supportive of a preclusion from all work activity. Plaintiff's needs resulted in some mental limitations but evidence was not supportive of a more restrictive RFC. (Tr. 25).

Exhibits 13F, 14F, and 28F were summarized above under the opinion issue. Exhibit 41F/8 is May 2019 exam notes from Dr. Baskett where Plaintiff examined with appropriate mood and affect. (Tr. 981).

Based on the foregoing, the ALJ properly considered the record and cited to substantial evidence to support the RFC found. Where there are two reasonable views of the evidence, the responsibility falls on the ALJ and it is not the court's duty to decide between them. *Johnson v.*

---

[5] This additional finding is essentially a normal work day and it is no error that it was not expressly included in the actual RFC finding.  *See* SSR 96–9p.

18

*Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The court cannot say that a reasonable mind would not reach this RFC in view of the totality of the evidence.

The ALJ supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record and provided explanation why there was no further CPP limitation in the RFC. *See Sizemore v. Berryhill*, 878 F.3d 72 (4th Cir. 2017)(Where evidence showed claimant could perform work on a sustained basis and moderate difficulties did not translate into a limitation on CPP in the RFC, substantial evidence supported the ALJ's decision); *see also Shinaberry v. Saul*, 952 F.3d 113, 121-123 (4th Cir. 2020)(finding an RFC of only simple, routine, and repetitive tasks without more did account for claimant's moderate CPP limitations where the ALJ discussed the record and explained why the RFC accounted for moderate CPP limitations). An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)).    While this court in several cases in the past has remanded cases based on *Mascio* where the ALJ did not explain the RFC in relation to CPP concerns, the ALJ here provided explanation based on evidence supporting the RFC found.  Based upon the foregoing, substantial evidence supports the ALJ's RFC.

<u>Interacting with Others</u>

Plaintiff argues the RFC does not properly account for difficulty with interacting with others.

First, no Fourth Circuit Court of Appeals decision has extended *Mascio*'s reasoning to "moderate" limitations in "interacting with others." There is no "conversion" rule/required accommodation in the RFC when a "moderate" social limitation is found at an earlier step; the normal RFC regulations still apply— that the ALJ must support the RFC findings with substantial

19

evidence.

At earlier steps, the ALJ found Plaintiff had moderate limitations in interacting with others

based on her reports of issues getting along with others, but Plaintiff also indicated she goes to AA

meetings, talks on the phone, and shops. The social RFC found here is "frequent interaction with the

public, coworkers, and supervisors." (Tr. 21). At the listing level, the ALJ commented Plaintiff

"retains the ability to have occasional interactions with others."[6] The ALJ found the frequency to be

"frequent" in the actual RFC determination. The ALJ noted that the limitations in the paragraph B

analysis are not the RFC determination. (Tr. 21). As discussed above, the ALJ cited to exhibits of

normal exams and activities. (Tr. 22-23). The ALJ concluded that the evidence was not supportive

of a more restrictive finding. (Tr. 25).

The ALJ properly considered the record and cited to substantial evidence to support the RFC

found. Where there are two reasonable views of the evidence, the responsibility falls on the ALJ and

it is not the court's duty to decide between them. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir.

2005). The court cannot say that a reasonable mind would not reach this RFC in view of the totality

of the evidence.  Based upon the foregoing, substantial evidence supports the ALJ's RFC.

As to Plaintiff's arguments regarding a proper function by function analysis, the ALJ's RFC

and RFC narrative is supported by substantial evidence as displayed above. (ECF No. 19 at 19). The

---

[6] Plaintiff does not argue that the ALJ is inconsistent in the opinion as to the level of
frequency of the interaction limitation. Out of an abundance of caution, the court notes the ALJ's
Listing finding on interactions does not necessarily align with the RFC finding on interactions.
Nevertheless, there is no harmful error because even if the RFC "should have been" "occasional"
instead of "frequent", all the jobs opined by the VE would still meet that RFC, as all of them
stated talking was not present and under "People-8-Taking Instructions-Helping" is marked "not
significant." *See* DOT#s 920.587-018, 1991 WL 687916, 318.687-010, 1991 WL 672755,
922.687-058, 1991 WL 688132. The VE testified only if it was less than occasional would there
be no jobs. (Tr. 69).

RFC discussion by the ALJ permitted meaningful review.[7]

### III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

August 24, 2022  
Florence, South Carolina

s/ Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

---

[7] Remand may be appropriate when there is no function by function analysis, but remand is only appropriate when meaningful review is frustrated and the court is "unable to fathom the rationale in relation to evidence in the record." *See Mascio*, 780 F.3d at 636 (*citing Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Such is not the case here on either account. *See e.g. Ladda v. Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. Oct. 18, 2018)and *Wilbanks v. Berryhill*, No. CV 1:17-1069-JMC-SVH, 2018 WL 4941121, at *10 (D.S.C. Feb. 7, 2018), *report and recommendation adopted sub nom.*, 2018 WL 4476118 (D.S.C. Sept. 19, 2018).